IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LINDA ILGENFRITZ**, | ) CIVIL ACTION NO. 11-595 |
| Plaintiff, | ) |
| v. | ) |
| **HONORABLE ROBERT GATES**, | ) |
| *Secretary of the Department of Defense* | ) |
| Defendant, | ) |

**MEMORANDUM OPINION AND ORDER**

CONTI, District Judge.

*I.   Introduction*

Plaintiff Linda Ilgenfritz ("plaintiff"), a former employee of the Defense Contract Management Agency ("DCMA" or the "agency"), filed a one-count complaint against defendant Robert Gates ("defendant"), former Secretary of the United States Department of Defense. (ECF No. 1.) Plaintiff asserted claims under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.* Specifically, she claimed that the DCMA changed her compressed work schedule and withdrew her authorization to work at home two days per week, while other younger employees were permitted to keep their flexible work schedules. She claimed the schedule changes ultimately forced her to retire early.

Pending before the court is a motion to dismiss plaintiff's complaint for failure to exhaust administrative remedies. (ECF No. 4.) Defendant presents the motion as one for relief under

1

Rule 12(b)(1), asserting that the court lacks subject-matter jurisdiction; in the alternative, defendant argues dismissal is appropriate under Rule 12(b)(6) or Rule 56 of the Federal Rules of Civil Procedure. (ECF No 5 at 10.)[1]

## II. Factual Background as Set Forth in the Amended Complaint

The complaint in this case is a nearly verbatim recitation of the allegations in the complaint from Ilgenfritz v. Gates, Civ. No. 09-1502 ("Ilgenfritz I"), which the court dismissed without prejudice for failure to exhaust administrative remedies on July 26, 2010. Ilgenfritz v. Gates, Civil Action No. 09-1502, 2010 WL 2978090 (W.D. Pa. July 26, 2010). The only change in substance is the addition of paragraph 26, which provides:

> Prior to initiating this action, Plaintiff exhausted all of her administrative remedies. Plaintiff timely filed the denial of her grievance to the EEOC. (See letter dated July 15, 2010 accepting the appeal attached hereto as Exhibit 1). The EEOC closed its files on April 12, 2011 after the EEOC could not and would not issue a Final Agency Decision. More than 180 days had elapsed since the EEOC docketed the Appeal on June 21, 2010. A true and correct copy of this decision is attached hereto as Exhibit 2.

(Compl. (ECF No. 1) ¶ 26.)

Plaintiff is an approximately sixty-three-year-old former procurement technician, who was employed in DCMA's regional office in Pittsburgh, Pennsylvania. (Compl. (ECF No. 1) ¶¶ 7, 9.) Prior to April 2009, plaintiff worked ten hours each day from Monday through Thursday.

---

[1] With respect to exhaustion arguments for dismissal, "[m]otions under Rule 12(b)(6) are typically filed when the administrative exhaustion dispute involves a matter of timeliness. Under circumstances where it is clear from the face the pleadings that administrative remedies have not been exhausted, a motion to dismiss on jurisdictional grounds is appropriate under 12(b)(1)." Ilgenfritz v. Gates, Civ. No. 09-1502, 2010 WL 2978090 (W.D. Pa. July 26, 2010) (citations omitted).

(Id. ¶ 11.) She also teleworked on two days of each work week. (Id.) In mid-March 2009, plaintiff asked her immediate supervisor if it would be possible for her to telework an additional day each week. (Id. ¶ 13.) Plaintiff was informed that her request was approved, she was being assigned management support office ("MSO") duties in addition to her regular duties, and these additional duties could be performed at home. (Id. ¶ 14.)

On March 23, 2009, plaintiff was advised by e-mail that her CWS and telework days were being suspended effective in the immediate future. (Id. ¶ 15.) Plaintiff inquired about the reason for the change and was told that the MSO duties required her daily presence at the office, and that "Colonel Anderson did not approve of CWS and wanted the practice discontinued throughout the Ohio River Valley region." (Id. ¶ 16.)

By an e-mail dated April 24, 2009, plaintiff learned that CWS was cancelled for all employees of the Pittsburgh office, and that telework requests would have to be resubmitted. (Id. ¶ 17.) By an e-mail dated May 1, 2009, the April 24, 2009 e-mail was rescinded for all employees except plaintiff. (Id.) At approximately the same time plaintiff learned that the DCMA Pittsburgh office would be relocating from Oakland, Pennsylvania, to downtown Pittsburgh in late July 2009. (Id. ¶ 18.) The relocation caused an increase in the time of plaintiff's commute, as well as the expense of her parking. (Id. ¶ 19.) The complaint alleges that the defendant was aware of plaintiff's "health issues," which made the increased commute "impractical." (Id.) Defendant refused to consider reinstating plaintiff's CWS and telework agreement. (Id. ¶ 20.) At the time plaintiff's CWS and telework option were cancelled, numerous employees who were substantially younger than plaintiff were permitted to continue on CWS and to telework. (Id. ¶ 21.) Plaintiff alleges that defendant's actions caused her to be

constructively discharged effective July 31, 2009.  (Id. ¶¶ 22-24.)

Plaintiff does not dispute the following facts set forth in the motion to dismiss.  Plaintiff was a bargaining unit employee covered by a collective bargaining agreement ("CBA") between the DCMA and the American Federation of Government Employees, DCMA Council 170 ("AFGE" or the "union").  (Mot. ¶ 7)  The CBA provides that an aggrieved employee who alleges discrimination may raise the matter under the statutory procedure - an Equal Employment Opportunity ("EEO") complaint - or under the negotiated grievance procedure, but not both.  (Id.)  The CBA provides for arbitration in the event that a grievance remains unresolved in the grievance process.  (Id.)

On April 7, 2009, plaintiff sent an e-mail message to the DCMA's EEO officer, Kim Appleton, regarding the changes to plaintiff's work schedule expressing concern about possible discrimination based upon her age.  (Id. ¶ 9)  Appleton called plaintiff and discussed administrative remedies with plaintiff including the EEO process, union grievance procedures, and the DCMA Ombudsman program.  (Id.)  Plaintiff indicated she was going to send a letter to the union and did not want to pursue an EEO complaint at that time.  (Id.)  On the same day, plaintiff sent an e-mail message to the union president, Stephen Katchur ("Katchur"), regarding her changed work schedule.  (Id. ¶ 10. )  In the e-mail plaintiff informed Katchur that she wished to file a grievance against the DCMA.  (Id.)

On April 22, 2009, the union asked the DCMA to provide written justification for the changes in plaintiff's telework and work schedules.  (Id. ¶ 11.)  On May 6, 2009, the agency responded to the union's request for information indicating it was necessary to change plaintiff's work schedule because of the addition of MSO duties to plaintiff's job.  (Id.)

On May 29, 2009, the union filed a step 1 grievance on plaintiff's behalf.  In the grievance the union advised that the subject matters of the grievance were the changes made to plaintiff's work and telework schedules, but that discrimination was not an issue in the grievance. (Id. ¶ 12.)  On June 26, 2009, the agency denied the step 1 grievance explaining that the addition of MSO duties to plaintiff's work assignment required her presence in the office on a daily basis. (Id. ¶ 13. )   On July 22, 2009, the union filed a timely step 2 grievance related to plaintiff's work schedule and telework option and stated that discrimination based on race, color, religion, age, sex, or national origin was not an issue in the grievance.  (Id. ¶ 15.)

On August 2, 2009, plaintiff announced her retirement, effective July 31, 2009, in an e-mail sent to her DCMA team members.  (Id. ¶ 16.)  The next day plaintiff sent notice of her retirement to her supervisor.  (Id.)   On August 7, 2009, plaintiff's step 2 grievance was denied as moot.  (Id. ¶ 17.)  The union did not advance the grievance to arbitration.  (Id. ¶ 18.)  Neither plaintiff nor the union amended the grievance to add discrimination as an issue.  (Id.)  Plaintiff did not appeal the step 2 grievance decision to the Equal Employment Opportunity Commission ("EEOC").  (Id.)  On August 11, 2009, plaintiff's attorney notified the DCMA's EEO office of plaintiff's desire to begin EEO counseling on a claim of forced retirement due to age discrimination and a hostile work environment.  (Id. ¶ 19.)  On September 2, 2009, the DCMA's EEO counselor interviewed plaintiff's counsel.  (Id. ¶ 20.)

On September 14, 2009, the DCMA's EEO office notified plaintiff's counsel that plaintiff's EEO counseling was completed and she could file a formal complaint of discrimination.  (Id. ¶ 21.)  The EEO office advised plaintiff that a formal complaint of discrimination must disclose whether the employee also filed a grievance under a negotiated

procedure on the same claims.  (Id.)  On September 19, 2009, plaintiff filed a formal EEO complaint citing age discrimination, reprisal/hostile work environment, and forced retirement. (Id. ¶ 22.)

By letter dated October 13, 2009, the EEO office dismissed plaintiff's EEO complaint on the basis that plaintiff first elected to raise the matter of her changed work schedule under the negotiated grievance procedure and plaintiff's formal EEO complaint involved the same agency action as the union grievance.  (Id. ¶ 23; Compl., Ex. 1.)  The letter notified plaintiff that it constituted the "Final Agency Decision" on the matter of plaintiff's EEO complaint.  (Id.)  On October 16, 2009, plaintiff's attorney objected to the agency's final decision, arguing that the election of remedies rule should not apply where the grievance did not include the issue of discrimination.  (Mot. ¶ 24.)  On October 23, 2009, the agency responded explaining that the election of remedies applies irrespective of whether or not the issue of discrimination was specifically raised in the negotiated grievance process.  (Id.)

On November 10, 2009, plaintiff filed Ilgenfritz I alleging she exhausted her administrative remedies through the statutory EEO process. (Compl. ¶ 27.)   On July 26, 2010, the court dismissed the complaint in that case without prejudice for failure to exhaust administrative remedies.  The court noted that "the dismissal [would] not preclude plaintiff from seeking to exhaust her administrative remedies in the grievance process."  Ilgenfritz, 2010 WL 2978090, at *10.

Plaintiff subsequently attempted to cure her failure to exhaust before filing the instant action.  Plaintiff attached to her complaint: (1) a July 15, 2010 letter from the EEOC acknowledging receipt of plaintiff's appeal on June 21, 2010 (ECF No. 1-2); and (2) an April 12,

6

2011 letter in which the EEOC informed plaintiff's counsel that plaintiff's appeal was administratively closed on February 4, 2011 after its withdrawal was requested by plaintiff's attorney (ECF No. 1-3).

### III. Standard of Review[2]

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, a court must dismiss a matter if it lacks subject-matter jurisdiction over the complaint. FED. R. CIV. P 12(b)(1). Challenges to subject-matter jurisdiction under Rule 12(b)(1) may be facial or factual in form. Gould Elec. Inc.v. United States, 220 F.3d 169, 176 (3d Cir. 2000); Mortensen v. First Fed. Sav. and Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). A facial challenge attacks the complaint on its face and requires the court to consider only the complaint's allegations and to do so in the light most favorable to the plaintiff. Mortensen, 549 F.2d at 891. A factual challenge contests the existence of subject-matter jurisdiction, apart from any pleadings. Id. In reviewing a factual challenge, the court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case," even where disputed material facts exist. Id. In a factual challenge, the plaintiff has the burden of persuasion to show that jurisdiction exists. Id.; Gould, 220 F.3d at 178.

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a Rule 12(b)(6) motion to dismiss, the court is not opining on whether the plaintiff will

---

[2] In Ilgenfritz I, this court determined that the appropriate procedural posture of a substantially similar motion to the pending motion was under Federal Rule of Civil Procedure 12(b)(1).

be likely to prevail on the merits; rather, when considering a motion to dismiss, the court accepts as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. U.S. Express Lines Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002).  While a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, a complaint must provide more than labels and conclusions. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  A "formulaic recitation of the elements of a cause of action will not do." Id. (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).  "Factual allegations must be enough to raise a right to relief above the speculative level" and "sufficient to state a claim for relief that is plausible on its face." Id. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 556).

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. . . . Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Id. at 1949 (quoting Twombly, 550 U.S. at 556) (internal citations omitted).

Two working principles underlie Twombly. Id.  First, with respect to mere conclusory statements, a court need not accept as true all the allegations contained in a complaint. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555.)  Second, to survive a motion to dismiss, a claim must state a plausible claim for relief. Id. at 1950.  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense." Id. (citing 490 F.3d at 157-58). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n] - that the pleader is entitled to relief.'" Id. (quoting FED. R. CIV. P.. 8(a)(2)). A court considering a motion to dismiss may begin by identifying pleadings that are not entitled to the assumption of truth because they are mere conclusions. "While legal conclusions can provide the framework of the complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

Generally, if "matters outside the pleadings are presented to and not excluded by the court" a motion to dismiss must be treated as a motion for summary judgment. FED R. CIV. P. 12(d). There are several narrow exceptions to this general rule. First, a court is permitted to consider documents "integral to or explicitly relied upon in the complaint" in ruling on a motion to dismiss. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997). "Plaintiffs cannot prevent a court from looking at the texts of the documents on which [their] claim is based by failing to attach or explicitly cite them." Id. Second, the court may rely on "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). Third, the court may rely on public records (if undisputed) such as criminal case dispositions, letter decisions of government agencies and published reports of administrative bodies. Id. at 1197. The rationale behind these exceptions is that the plaintiff is already on notice of the documents in these situations, and as

9

such is not prejudiced by their consideration on a motion to dismiss.  See U.S. Land Res. v. JDI Realty, LLC, Civil Action No. 08-5162, 2009 WL 2488316, at *4 (D.N.J. Aug. 12, 2009).

IV.     *Discussion*

In the motion to dismiss, defendant argues that plaintiff failed to exhaust her administrative remedies for two reasons.  First, defendant argues that plaintiff failed to exhaust her remedies because she never raised age discrimination in the grievance process.   Second, defendant argues that plaintiff failed to exhaust administrative remedies because her appeal to the EEOC was not timely filed.  These two bases for dismissal, including the responses of the plaintiff, will be considered in order.  In Ilgenfritz I, this court discussed the statutory background of the Civil Service Reform Act of 1978 ("CSRA"), 5 U.S.C. §§ 7101 et seq., the ADEA and how the two statutes interact.

Defendant's first basis for dismissal is that plaintiff's age discrimination claim was not fully exhausted in the grievance process because no allegations of age discrimination were included in either of her step 1 or step 2 grievance.  (ECF No. 5 at 13.)  Defendant points out that this court in its prior decisions suggested to plaintiff that she may need to amend her grievance to include age discrimination, but that she chose not to do so.  (Id.)  Defendant relies on Antol v. Perry, 82 F.3d 1291 (3d Cir. 1996) (affirming dismissal at summary judgment of a gender discrimination claim for failure to exhaust administrative remedies).

In Antol, the court of appeals ruled that the relevant test in determining whether administrative proceedings exhausted a discrimination claim was whether the "'acts alleged in the subsequent . . . suit are fairly within the scope of the prior" administrative proceedings.  Id. at

1295. The court ruled that the plaintiff failed to exhaust his administrative remedies because neither the EEOC nor the agency were on notice of a gender discrimination claim. Id. at 1296 ("The purpose of requiring exhaustion is to afford the EEOC the opportunity to settle disputes through conference, conciliation, and persuasion, avoiding unnecessary action in court."); see Williams v. E. Orange Cmty. Charter Sch., 396 F. App'x 895, 897-98 (3d Cir. 2010) (holding that a claim under the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq., was not exhausted through administrative proceedings which only alleged discrimination on the basis of race, religion, and age); Barzanty v. Verizon PA, Inc., 361 F. App'x 411, 413-14 (3d Cir. 2010) ("After a charge is filed, the scope of a resulting private civil action in the district court is defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." (internal quotations omitted)); see, e.g., Fugarino v. Univ. Servs., 123 F. Supp. 2d 838, 841 (E.D. Pa. 2000) (holding a retaliation claim could "reasonably be expected to grow out of" a charge of sex discrimination).

Defendant also relies on Rosell v. Wood, 357 F. Supp. 2d 123, 132 (D.D.C. 2004), in which the district court held that a plaintiff who affirmatively chose not to amend his grievance against the government employer to include age and disability discrimination under the ADEA and Rehabilitation Act failed to exhaust the administrative remedies available to him, and was precluded from bringing the same claims in district court.

In response, plaintiff argues that she did "update/amend" her grievance process to include age discrimination in a letter dated June 18, 2010 (the "June 18 letter"). (ECF No. 14 at 7.) Although the June 18 letter is Exhibit 2a in the appendix to plaintiff's response, the complaint does not refer to it. To the extent, however, that this is a jurisdictional challenge, the

11

court may consider the letter without converting this motion to a motion for summary judgment. The June 18 letter requests that a nearly year-old decision to dismiss plaintiff's grievance should be appealed to arbitration. (ECF No. 15-2 at 3.) The letter does not specifically reference age discrimination. It does, however, contain the following statement: "I did not retire voluntarily. I was forced to retire due to the hostile work environment surrounding my discriminatory change in my work schedule." (Id.)

Upon review of the other grievance materials, it is clear that age discrimination was not considered during the grievance process. (See Exs. 6-14 (ECF Nos. 5-2 & 5-3).) The only mention of age discrimination prior to the EEOC complaint occured in an initial communication between plaintiff and the EEO representative at her agency. Plaintiff suggests she considered it as a possible reason for her adverse change in circumstances. (Ex. 6 (ECF No. 5-2).) At no other time is age or age discrimination mentioned as an issue in the grievance process, which focused on whether the decision to strip plaintiff of her scheduling accommodations violated a CBA. The formal grievances explicitly provided that "[a]t this time, AFGE Local 2304 has determined that discrimination based on race, color, religion, age, sex or national origin is not an issue in this grievance." (Ex. 11 (ECF No. 5-2); Ex. 14 (ECF No. 5-3).)

The complaint must be dismissed for lack of subject-matter jurisdiction because plaintiff did not allege age discrimination during the course of her negotiated grievance proceedings. The paperwork submitted in connection with the grievance explicitly stated otherwise, and no communication reflected that age was relevant to the dispute about plaintiff's work schedule changes. The grievance process focused only on the CBA and its requirements.

The alleged violations of the CBA could not reasonably be expected to grow into an action for age discrimination, especially when the CBA grievance explicitly stated that age discrimination was not an issue. Although plaintiff attempted to amend her grievance by requesting arbitration or appeal to the EEOC, she did not actually seek to amend the grievance itself. The request for arbitration came after the thirty-day deadline provided by the CBA, and the attempt to appeal to the EEOC was improper in any event because the grievance procedure did not raise any complaints over which the EEOC had jurisdiction. (See CBA, Art.31, § 1.A, Ex. 5 (ECF No. 5-1) (notice of arbitration should be served no later than thirty days following the rendering of the step 2 decision).) An appeal to the EEOC is only permitted when "an issue of employment discrimination was raised" in the grievance procedure, 29 C.F.R. § 1614.401(d), which involves a "complaint of discrimination of the type prohibited by any law administered by the Equal Employment Opportunity Commission." 5 U.S.C. § 7121(d).

The second argument made by defendant is that the complaint should be dismissed because plaintiff failed to exhaust her administrative remedies in a timely manner. Specifically, defendant notes that the request for arbitration was entered nearly nine months after the deadline for making a request had passed. Defendant argues that the appeal to the EEOC was filed nine months after the agency's final decision in denying the step 2 grievance, and as such was untimely because there is a thirty-day period for filing appeals to the EEOC. (ECF No. 5 at 15-16.) See Rogan v. Giant Eagle, Inc., 113 F. Supp. 2d 777, 783-84, 790 (W.D. Pa. 2000) (denying a discrimination suit for untimeliness in filing EEOC charges, and for failure to exhaust administrative remedies).

In response, plaintiff argues that she requested her step 2 decision be appealed to arbitration on two occasions. Although plaintiff does not present this argument in her brief explicitly, she seems to be arguing that the step 2 decision was not the final agency decision, but it was rather one of the later letters in which she was informed that the step 2 decision was the final decision. The fallacy in plaintiff's argument is that the decision she was attempting to appeal in an untimely manner was one in which the issue of age discrimination was not raised before the agency. What plaintiff needed to do was to obtain leave to amend the grievance itself so that the issue of age discrimination could be considered by the agency. Whether she would have been able to do so is not known. It remains true that she chose to utilize the grievance procedure and did not raise the issue of age discrimination in the grievance. Trying to raise that issue on appeal or via a request for arbitration so that the EEOC could consider the issue is akin to raising an issue on appeal to the court of appeals that was not raised before the district court. The court of appeals would not consider that issue. <u>Brenner v. Local 514, United Bhd. Of Carpenters & Joiners of Am.</u>, 927 F.2d 1283, 1298 (3d Cir. 1991) ("It is well established that failure to raise an issue in the district court constitutes waiver of the argument.") The analog of that rule here is the explicit statutory limitation of the EEOC's jurisdiction to review negotiated grievance procedures to "matter[s] involving a complaint of discrimination of the type prohibited by any law administered by the Equal Employment Opportunity Commission." 5 U.S.C. § 7121(d). If the matter does not include a complaint of discrimination of that type—as it did not here—the EEOC may not consider the issue on appeal because the EEOC is not permitted to accept the appeal in the first place. <u>Id.</u>

14

An instructive decision is Johnson v. Peterson, 996 F.2d 397 (D.C. Cir. 1993), which involved administrative exhaustion in the context of a union-negotiated grievance procedure. There, the Court of Appeals for the District of Columbia ruled that "the employee who chooses the negotiated grievance procedure must first appeal the arbitrator's award to the EEOC before bringing suit in district court." Id. at 400.

Plaintiff claims that she requested to appeal the step 2 decision to arbitration on two occasions. On review of the record, however, she must be referring to the email and letter, both of which she sent on June 18, 2010. She attached the letter to the email. (ECF Nos. 15-2 to -5.) In any event, plaintiff did not timely file her arbitration request or her appeal of the final agency decision to the EEOC. As noted, any appeal to the EEOC was inappropriate as the claims alleged in the grievance process were not age discrimination claims; rather, they related only to the CBA.

Plaintiff failed to raise her age discrimination claim in the grievance process and therefore failed to exhaust her administrative remedies with respect to age discrimination. As such, plaintiff may not bring a suit in district court. See Johnson, 996 F.2d at 400-401.

*ORDER*

AND NOW, this 9th day of February, 2012, upon consideration of the motion to dismiss (ECF No. 4) filed by defendant Robert Gates, the response thereto, and the arguments of counsel, for the reasons set forth above, it is hereby ORDERED that the motion is GRANTED and the complaint is DISMISSED. The clerk shall mark this case closed.

By the court,

　/s/ Joy Flowers Conti　
Joy Flowers Conti
United States District Judge